UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ISRAEL LOPEZ DAVILA, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * Civil Action No. 17-cv-12212-ADB |
| NANCY A. BERRYHILL, | * |
| Acting Commissioner of Social Security, | * |
| | * |
| Defendant. | * |
| | * |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

On November 9, 2017, Israel Lopez Davila ("Lopez") filed an appeal of the final decision by the Acting Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. [ECF No. 1]. Lopez claims that he is disabled as a result of cardiomyopathy, chronic heart failure, obesity, knee osteoarthritis, sleep apnea, anxiety and depression. [ECF No. 1 ¶ 7]. He challenged the Commissioner's denial of benefits on five grounds: (1) that the administrative law judge ("ALJ") failed to give appropriate weight to the treating source opinions; (2) that the ALJ erred in finding that Lopez's knee pain and sleep apnea were not severe impairments; (3) that the ALJ failed to properly consider the effects of his obesity; (4) that the ALJ failed to provide an adequate explanation for finding that Lopez did not meet a listing; and (5) that the Appeals Council committed egregious error when declining to consider new evidence. [ECF No. 17 at 12–20].

On November 6, 2018, Magistrate Judge Boal filed a Report and Recommendation ("R&R"), in which she found that the ALJ erred in finding that Lopez's cardiac condition was

not a listed impairment because some of the evidence indicated that Lopez may have met a listed impairment for chronic heart failure and the ALJ did not explain his conclusion that the listing was not met. [ECF No. 28 at 26–30]. In light of that finding, she recommended that the Court grant Lopez's motion for an order reversing the Commissioner, deny the Commissioner's motion to affirm, and remand the case pursuant to 42 U.S.C. § 405(g) for further findings and/or proceedings. [ECF No. 28 at 33–34]. Judge Boal rejected Lopez's four other grounds for appeal.

On November 20, 2018, Lopez filed an objection to Judge Boal's conclusions that there was no error in the weight that the ALJ gave the treating source opinions and that the ALJ adequately supported his conclusion that Lopez's osteoarthritis was not a severe impairment. Lopez has not specifically challenged the R&R's summary of the evidence, which the Court has reviewed and concludes is accurate. [ECF No. 29]. The Court presumes familiarity with the evidence and will forgo summarizing it anew here. The Court is required to make a *de novo* determination as to those portions of the R&R to which Lopez has objected and may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see Fed. R. Civ. 72(b)(3). The Court adopts the R&R to the extent that neither party has objected to it, and, following *de novo* review, accepts the conclusions to which Lopez objects for the reasons explained below.

I. DISCUSSION

A. The ALJ Did Not Err in Giving Treating Source Opinions Little Weight

Lopez challenges the ALJ's decision to give the opinions of two of his treating physicians, Dr. Kumar and Dr. Quintero, little weight. The ALJ found:

> Dr. Kumar, in May 2016, indicated the claimant could lift/carry less than ten pounds. He could stand and/or walk for less than two hours in an eight-hour day.

2

> He could sit for less than about six hours in an eight-hour day. The claimant was limited in the use of his upper extremities with pushing and pulling. Dr. Kumar stated that the claimant had severe cardiomyopathy, hypertension and implantable cardioverter defibrillator placement and could not exert without having symptoms of shortness of breath and chest pain. The doctor indicated the claimant did not experience environmental limitations. Further, Dr. Kumar stated that the claimant could not perform activities of daily living without his wife's assistance due to his severe cardiomyopathy. Although the claimant would have this lifelong condition, his prognosis could not be established with accuracy. (Ex. 11F)
>
> . . . Dr. Quintero, assessed heart failure systolic and obesity. The claimant was estimated to lift/carry ten pounds. He could stand and/or walk at least two hours in an eight-hour day and sit less than about six hours in an eight-hour day. He was unlimited in the ability to push/pull, other than any limitations for lift/carry. The clinician wrote that any heavy lifting, pushing and pulling could increase blood pressure impairing efficient pumping from the heart. The claimant could occasionally climb, balance, stoop, kneel, crouch and crawl. (Ex. 12F)
>
> After careful consideration of Dr. Kumar's and Dr. Quintero's opinions assessing the claimant at a less than sedentary exertion, I give them little weight, as they are inconsistent with other substantial evidence in the record, and not well-supported by the medical evidence which demonstrates that the claimant is limited only to the extent outlined in the residual functional capacity assessment above. Specifically, I find that these opinions are inconsistent with the claimant's activities of daily living, including working at the medium to heavy exertions, taking public transportation regularly, going to the gym and visiting with his brothers as well as his positive response to treatment. In addition, Dr. Kumar's opinions are outside her area of expertise, as a primary care provider and not a cardiologist.

ECF No. 13 ("Record") at 102.

Lopez challenges the ALJ's decision to give Dr. Kumar and Dr. Quintero's opinions little weight, claiming that the length, nature, and extent of his treatment relationships with them and Dr. Quintero's specialization as a cardiologist support more than "little weight." [ECF No. 17 at 19].

The First Circuit has explained that "a treating source's opinion on the question of the severity of an impairment will be given controlling weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Polanco-Quinones v. Astrue, 477 F. App'x 745,

746 (1st Cir. 2012) (quoting 20 C.F.R. § 404.1527(d)(2)).  An ALJ is "not required to accept the conclusions of claimant's treating physicians on the ultimate issue of disability," and may rely on other substantial evidence in the record to discount treating physicians' conclusions.  See Arroyo v. Secretary of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991); see also Tremblay v. Secretary of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982) ("We have repeatedly refused to adopt any per se rule" that "the treating physician's opinion should have been given greater weight than the consulting physician's.").  "It is within the Secretary's domain to give greater weight to the testimony and reports of medical experts who are commissioned by the Secretary."  Keating v. Secretary of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988) (quoting Lizotte v. Secretary of Health and Human Services, 654 F.2d 127, 130 (1st Cir.1981)).  An ALJ must, however, give "good reasons" for the weight accorded to a treating source's opinion.  Polanco-Quinones, 477 F. App'x 746 (quoting 20 C.F.R. § 404.1527(d)(2)).

Here, in conflict with Lopez's treating physicians, the state medical consultants assessed that Lopez could occasionally carry 20 pounds, frequently carry 10 pounds, stand or walk with normal breaks for a total of 2 hours, and sit for about 6 hours in an 8-hour workday.  Partially on that basis, they concluded that Lopez was capable of sedentary work and was not disabled.  Record at 201–03, 225–28.  The ALJ provided good reasons for the little weight he gave the treating physicians' opinions, and the significant weight he placed on the state medical consultants' opinions.  Specifically, the ALJ referenced Lopez's daily activities, which included housecleaning duties that involved lifting heavy objects, washing dishes, going to the gym, and taking public transportation.  An ALJ's weighing of competing medical opinions will not be overturned merely because he elected not to discuss the length and frequency of an individual's consultations with his treating physicians or the nature of his relationship with his physicians,

4

provided that the ALJ provides a "sufficiently clear" explanation and has "good reasons" for the weight he attributes the competing opinions. See Green v. Astrue, 588 F. Supp. 2d 147, 154 (D. Mass. 2008) (affirming decision not to give treating physician's opinion controlling weight because it was not supported by the record as a whole). Additionally, in contrast to Lopez's claims, the ALJ's findings suggest that he was aware of Dr. Quintero specialization, and the ALJ was, in any event, not required to discuss that fact.

### B. The ALJ Did Not Err in Finding that Osteoarthritis was Not a Severe Impairment

Lopez next asserts that his knee pain, which he attributes to osteoarthritis, limits his ability to sit, walk, and stand, and he claims that the ALJ erred in finding the pain a non-severe impairment. The ALJ concluded that Lopez's knee pain was non-severe because the impairment caused Lopez no more than minimal functional limitations. Record at 95. In support of this conclusion, the ALJ noted that Lopez had consulted with his primary care physician who recommended once-daily Ibuprofen and using a topical treatment, that there was no ongoing treatment for knee pain, that no medical source indicated that Lopez needed to use a cane, that Lopez had continued to conduct housekeeping duties at a grocery store after the alleged onset date, and that Lopez continued to use the stairs in the residence where he lived. Record at 95.

The severity policy is a "*de minimis* policy, designed to do no more than screen out groundless claims. . . . A finding of 'non-severe' is only to be made where medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." McDonald v. Secretary of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986) (emphasis in original, quotation marks omitted). An impairment or combination of impairments is "severe" if it significantly limits an

individual's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "[A] claim may be denied at step two only if the claimant's impairments 'do not have more than a minimal effect on the claimant's physical or mental abilities to perform basic work activities.'" Laboy v. Colvin, No. 16-cv-30081-KAR, 2017 WL 3668413, at *14 (D. Mass. Aug. 24, 2017) (quoting Dunn v. Colvin, No. 15-cv-13390, 2016 WL 4435079, at *8 (D. Mass. Aug. 19, 2016)). The ALJ has discretion to determine whether an impairment is severe, so long as he demonstrates that he reviewed the entire medical record and has substantial evidence to support his finding. Fortin v. Colvin, No. 3:16-cv-30019-KAR, 2017 WL 1217117, at *8 (D. Mass. Mar. 31, 2017) (citations omitted).

Here, substantial evidence supported the ALJ's finding, and the ALJ's finding was based upon a thorough review of the medical record available at the time. Lopez argues that his knee pain was severe considering the number of instances in which he complained of knee pain, as supported by the medical records, and his testimony before the ALJ. Although Lopez complained of knee pain during numerous medical consultations[1] and testified to using a cane and that he was unable to sit in one position for an extended period or to lift weight, see Record at 168–69, the ALJ supported his conclusion that Lopez's knee pain was non-severe with substantial evidence that demonstrates a thorough review of the record.

---

[1] E.g., Record at 558 (February 27, 2015: reporting bilateral knee pain, "Ibuprofen helps, but his prescription ran out"), 655 (September 20, 2015: listing "knee osteoarthritis" among active problems), 659 (March 10, 2016: noting pain in right knee), 664 (September 28, 2018: noting knee pain), 690 (June 10, 2014: noting bilateral knee pain for more than one year without accident or injury and describing pain), 812 (March 16, 2016: noting knee pain and that he continues to walk [sic] at stop and shop).

## II. CONCLUSION

Accordingly, Magistrate Judge Boal's Report and Recommendation is adopted to the extent it was not objected to and is accepted with respect to the weight given to Lopez's treating physicians' opinions and the sufficiency of the ALJ's conclusion that Lopez's knee pain was non-severe. The Court grants Lopez's motion for an order reversing the Commissioner, denies the Commissioner's motion to affirm, and remands the case to the Commission pursuant to 42 U.S.C. § 405(g) for further finding and/or proceedings consistent with Magistrate Judge Boal's recommendations.

**SO ORDERED.**

December 11, 2018 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE